UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAAD ABBAS,

                          Plaintiff,

v.                                                         6:14-CV-0959
                                                              (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

SAAD ABBAS
 Plaintiff, Pro Se
1450 Kemble Street, Apt. A
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.              ANDREA L. LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Saad Abbas ("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 15, 17.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

   Plaintiff was born on July 26, 1963. He completed a high school education in Iraq as well as two years of trade school for air conditioning. Plaintiff received training in the English language from the fifth grade through high school, and learned the air conditioning trade in English. However, at this time, Plaintiff understands only a little bit of English and gets assistance from his four children when necessary. Plaintiff's employment history consists of work as a soldier in the Iraqi military and work as a piano player. Generally, Plaintiff's alleged disability consists of neck problems, knee problems, numbness in his left arm, allergies, anemia and vision problems. Plaintiff's alleged disability onset date is January 1, 2002.

   B. **Procedural History**

   On March 15, 2012, Plaintiff applied for Supplemental Security Income benefits. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 23, 2013, Plaintiff appeared before the ALJ, Robert Gale, but the hearing was postponed so that Plaintiff, who was appearing pro se, could obtain counsel. Plaintiff again appeared pro se before the ALJ on September 17, 2013, at which time a hearing was held. (Tr. 396-410.) On October 16, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 27-38.) On May 5, 2014, the Appeals Council granted Plaintiff's request for review and notified Plaintiff of its proposal to issue an unfavorable decision finding that Plaintiff was not disabled during the relevant period because Plaintiff was able to perform his past relevant work as he actually performed it. (Tr. 9-14.) Plaintiff did not submit additional comments or new evidence within the allotted time. On July 9, 2014, the Appeals Council issued its unfavorable decision, rendering it the final decision

of the Commissioner. (*Id.*) Thereafter, Plaintiff, again appearing pro se, timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (Tr. 32-37.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (Tr. 32.) Second, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine with sciatica is a severe impairment but that Plaintiff's multifactorial anemia, abdominal pain diagnosed as celiac adenopathy, knee pain, carpal tunnel syndrome and headaches are not severe. (Tr. 33.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) In so doing, the ALJ considered Listing 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk four hours total in an eight-hour workday, and sit four hours total in an eight-hour workday, consistent with a full range of light work as defined in 20 C.F.R. § 416.967(b).[1] (Tr. 34-36.) Fifth, the ALJ found that Plaintiff has no past relevant work. (Tr. 37.) Sixth, and

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*.)

### D. The Appeals Council's Decision

In its decision, the Appeals Council adopted the ALJ's statement of the law, facts and relevant issues. (Tr. 11.) Next, the Appeals Council generally accepted the ALJ's RFC but modified it to reflect that Plaintiff is able to sit for up to approximately six hours in an eight-hour workday. (*Id.* ) In addition, the Appeals Council did not accept the ALJ's finding that Plaintiff has no past relevant work. (Tr. 11-12.) Rather, the Appeals Council found that Plaintiff has past relevant work as a keyboard player. (*Id*.) Finally, the Appeals Council concluded that, based on Plaintiff's ability to perform a wide range of light work, he is capable of performing his past relevant work as a keyboard player, and thus, is not disabled. (Tr. 12.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Construing Plaintiff's motion papers with the utmost of liberality,[2] the Court interprets Plaintiff's brief to state the following two arguments. First, Plaintiff argues that his impairments limit him to "a [fifteen] minute stand" and prevent him from lifting more than ten pounds or

---

[2] When, as here, a party seeks judgment against a pro se litigant, a court must afford the pro se litigant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated, "[t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest." *Id.* (citations omitted). At the same time, courts should not "read into pro se submissions [arguments] that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." *Id.* (citations omitted). Finally, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (citations omitted).

walking for more than ten to fifteen minutes. (Dkt. No. 15 [Pl.'s Br.].) Second, Plaintiff argues that his treating physicians have all opined that he has neck pain. (*Id.*) Accordingly, Plaintiff requests that the Commissioner be required to reevaluate his decision that Plaintiff is not disabled. (*Id.*)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the Commissioner reasonably concluded that Plaintiff can do a range of light work. (Dkt. No. 17 at 5-14 [Def.'s Mem. of Law].) Second, Defendant argues that the Commissioner reasonably found that Plaintiff is capable of performing his past relevant work. (*Id.* at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or if the determination was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "[I]n a case in which the claimant is handicapped by lack of counsel, ill health, and inability to speak English well, the courts have a duty to make a 'searching investigation' of the record." *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen*

6

*v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the Commissioner Erred in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 5-13 [Def.'s Mem. of Law].) To those reasons, the Court would add only the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984).

Here, the ALJ and Appeals Council properly considered all of the record evidence when making the RFC determination. With respect to the objective medical evidence, both the ALJ and Appeals Council acknowledged that Plaintiff had cervical disc herniations and lumbar disc space narrowing. (Tr. 12, 36, 152, 154.) Moreover, the ALJ noted that Plaintiff complained of pain during physical examinations and claimed that "the only relief he gets from pain is from lying down, massage, and heat." (Tr. 36.) However, the ALJ also noted that Plaintiff walked with a normal gait, was not in apparent distress, and was independent in his activities of daily living. (Tr. 36, 227, 243.)

Regarding the opinion evidence, the ALJ considered the report of Dr. Ivan Antonevich, which was accorded the greatest evidentiary weight. (Tr. 36.) Dr. Antonevich is Plaintiff's pain

management specialist and has treated Plaintiff for a continuous period. (*Id*.) Dr. Antonevich opined that Plaintiff could lift up to 20 pounds occasionally and 10 pounds continuously, indicating that Plaintiff is capable of performing the lifting requirements of light work. (Tr. 36, 220.) Furthermore, Dr. Antonevich opined that Plaintiff could sit for up to four hours in an eight-hour workday as well as stand and walk for up to two hours. (Tr. 221.) While the ALJ incorporated Dr. Antonevich's opinion that Plaintiff can sit for up to four hours in his RFC, the Appeals Council found it to be less persuasive, revising the RFC to reflect that Plaintiff can sit for up to six hours in an eight-hour workday. (Tr. 12.) The Court of Appeals for the Second Circuit has held that, "[w]hile the opinions of a treating physician deserve special respect, . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record . . . .Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Here, the Appeals Council revised the RFC based upon the report of consultative examiner, Dr. Pamela Tabb, M.D., who indicated that Plaintiff had no restrictions for physical activity. (Tr. 12, 33, 151-52.) The Appeals Council further noted that, while Plaintiff had cervical disc herniations, as indicated by an MRI, the MRI also revealed "normal limits and alignment with no fractures and normal signal of the cervical cord." (Tr. 12.) The Appeals Council also considered a nerve conduction study that was completed during a consultation examination. (*Id*.) This examination determined that, while Plaintiff's upper extremities showed right carpal tunnel syndrome, it is "asymptomatic at this point" and the Plaintiff's "left hand numbness did not warrant any further treatment for carpal tunnel syndrome." (*Id*.) Similarly, as noted by the ALJ, Dr. Tabb found Plaintiff's sensation was unimpaired and had full grip strength during her examination. (Tr. 33, 152.) Plaintiff also testified that he can zip zippers, button

9

buttons, and use a pen to write on paper. (Tr. 408.) Although the Appeals Council acknowledged that Plaintiff has impairments which may cause pain, the Council concluded that these impairments were accommodated in the ALJ's RFC. (Tr. 12.) Accordingly, this Court finds that there is substantial evidence to support the determination that Plaintiff can sit for up to six hours and stand and/or walk for up to four hours in an eight-hour workday.

Finally, in evaluating Plaintiff's RFC, the ALJ also considered Plaintiff's subjective complaints of pain. (Tr. 33-36.) These complaints included, among other things, neck pain, back pain, pain in both knees, and needing to lie down "all the time" because of pain. (Tr. 33-35, 150-51, 243, 404-05.) Plaintiff also claims he can sit for only 15 minutes and is limited to walking and standing for up to 10 minutes. (Tr. 35.) After considering the evidence, the ALJ made the following conclusion:

> The undersigned finds that although he has medically determinable severe impairments, these impairments do not cause the degree of limitations alleged by the claimant. When evaluated, the claimant's subjective complaints are found to be somewhat exaggerated and to be inconsistent with the other evidence, including the clinical and objective findings of record and would not be a sound basis for a finding of disability.

(Tr. 35.) The ALJ further stated that, having considered "the extent of his overall daily activities, and the essentially positive effects of medication considering the waxing and waning of his symptoms, it is not credible that his symptoms were of such intensity, frequency or duration as to preclude all work activity." (*Id*.)

It is well established that "'[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant.'" *Aponte v. Sec'y, Dep't Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir.1983]). "The

ALJ 'has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . . [which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'" *King v. Astrue*, 12-CV-6186T, 2013 WL 3154129, at *8 (W.D.N.Y. June 21, 2013) (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 [2d Cir.1984]). "If 'after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that decision is supported by substantial evidence.'" *Drennen v. Astrue*, 10-CV-6007MAT, 2012 WL 42496, at *6 (W.D.N.Y. Jan. 9, 2012) (quoting *Pascariello v. Heckler*, 621 F. Supp. 1032, 1036 [S.D.N.Y.1985]); *see also Mimms*, 750 F.2d at 186 (holding that, "while an ALJ 'has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding that pain, he must do so] in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant'") (quoting *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 705 [2d Cir. 1980]).

Here, in addition to the medical and opinion evidence discussed above, the ALJ considered additional record evidence that contradicted some of Plaintiff's claims. (Tr. 33-36.) For example, the ALJ noted that, while Plaintiff claims he has to lie down "all the time" because of pain, cannot sit for more than 15 minutes or stand and/or walk for more than 10 minutes, Plaintiff was still able to bathe, watch television, play music, take care of family finances, and go shopping with his son. (Tr. 35.) The finding that Plaintiff's pain is not as severe as he alleges is also supported by medical evidence. As discussed above, Dr. Tabb noted that, during her examination, Plaintiff did not have any limitations in performing physical activity and Plaintiff did not mention he had any problems with sitting. (Tr. 35-36, 150.) Dr. Antonevich noted that Plaintiff does not have difficulty taking care of himself, is able to pick up objects from the floor

11

comfortably, and reported being independent with activities of daily living. (Tr. 243.) Similarly, Dr. Leroy Cooley, M.D., examined Plaintiff's knees, which did not "reveal any definite abnormalities . . . [Plaintiff] has a full range of motion and there is no ligamentous instability bilaterally." (Tr. 227.) Granted, Dr. Cooley did note that Plaintiff "has pain in his back with motion of his hips, but no hip pain." (*Id*.) However, the ALJ made the following observation during the hearing:

> The claimant displayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

(Tr. 35.) An ALJ is permitted to consider physical demeanor during an administrative proceeding as one of several factors in evaluating credibility. *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *see also* 20 C.F.R. § 416.929(c)(3); SSR 96-7p. Based upon the foregoing, there is substantial evidence in the record to support the ALJ's findings regarding Plaintiff's alleged pain.

It bears noting that, while the ALJ did give some weight to Plaintiff's subjective complaints, he concluded that Plaintiff's symptoms were not as intense as alleged. (Tr. 34-35.) As Defendant correctly notes, it is not necessarily inconsistent to find that a claimant experiences pain yet is not so impaired as to meet the test for disability imposed by the Social Security Act. (Dkt. No. 17 at 13 [Def.'s Mem. of Law].); *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) (stating that "[i]t is important to note that the test for disability under the Social Security Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort."); *Torres-Rosas v. Bowen*, 678 F. Supp. 420, 424 (S.D.N.Y. 1987). Finally, although the opinion of nurse

practitioner, Deanna Brady, MSFNP-C, was submitted and substantially supports Plaintiff's claims, the Court does not find error in the ALJ's decision to accord Ms. Brady's opinion less weight on the ground that it was inconsistent with the medical record evidence. (Tr. 36.); *see also* (Dkt. No. 17 at 10-12 [Def.'s Mem. of Law].)

Accordingly, the Court finds that the Commissioner's RFC determination is supported by substantial evidence.

### B. Whether the Commissioner Erred in Determining that Plaintiff Can Perform His Past Relevant Work

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 14-15 [Def.'s Mem. of Law].) To those reasons, the Court would add only the following analysis.

"[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). In other words, a claimant is not disabled if he can perform his past relevant work, either as she actually performed it, or as it is generally performed in the national economy. *See* SSR 82-61, 1982 WL 31387, at *2 (1982); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). "'[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.'" *Kochanek v. Astrue*, 08-CV-310, 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) (quoting *Kerulo v. Apfel*, 98-CV-7315, 1999 WL 813350, at *8 [S.D.N.Y. Oct. 7, 1999]).

Here, Plaintiff reported that he worked as a keyboard player in Iraq from the 1980s until 2001. (Tr. 121.) He indicated that this occupation required him to sit but he did not have to stand or walk. (Tr. 121-122.) Moreover, Plaintiff claimed that this job required frequent lifting of 10 pounds or less, the heaviest weight being 100 pounds or more, which appears to be associated with carrying speakers and similar equipment. (Tr. 12, 122.) Although the ALJ found that Plaintiff did not have any past relevant work, the Appeals Council found that Plaintiff had a past occupation as a keyboard player, which he could still perform. (Tr. 12.) In so doing, the Appeals Council acknowledged Plaintiff's claim that he may have to lift up to 100 pounds. (Tr. 11.) However, relying on the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"), the Appeals Council concluded that lifting and carrying speakers and keyboard equipment is not an integral part of working as a keyboard player. (Tr. 12); *see* DOT 152.041-010.

In *Johnson v. Barnhart*, 329 F. Supp. 2d 751 (W.D. Va. 2004), the U.S. District Court for the Western District of Virginia faced a similar situation. There, the claimant had been employed as a security guard, claiming that, in addition to his duties monitoring the premises of a Wal-Mart, he was required to occasionally help customers load heavy items into their vehicles. *Johnson*, 329 F. Supp. 2d at 753. Due to a back injury, the claimant argued that he could no longer perform the lifting required by his past position. *Id*. Although the ALJ agreed that the claimant could no longer lift heavy items, the ALJ determined that he could perform the light level of exertion demanded of security guards generally in the national economy, as classified by the DOT. *Id*. The district court agreed, holding that "the past relevant work inquiry includes how a job is generally performed in the national economy." *Id*. Therefore, the court held that there was substantial evidence that the claimant could perform the duties of a security guard,

according to the DOT, and was not disabled. *Id.* at 755; *see also Pass v. Chater*, 65 F.3d 1200, 1204 n. 3 (4th Cir. 1995) (holding that "a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required to by employers in the national economy").

Similarly, in the present matter, although Plaintiff was allegedly required to carry heavy items (such as speakers and keyboard equipment) during his previous employment, these duties are not found to be an integral part of employment as a keyboard player per the DOT. DOT 152.041-010. Accordingly, because there is substantial evidence supporting the Commissioner's determination that Plaintiff can perform light work, there is substantial evidence in the record to find that Plaintiff can perform the light level of exertion generally required of keyboard players.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 6, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge